**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **NO. 5:26-MJ-5087-MAS** |
| ) | **5:26-CR-00060-GFVT-EBA** |
| **EDGAR HERNANDEZ-DURON,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION & ORDER

The United States asks the Court to detain Edgar Hernandez-Duron and his codefendants pretrial following their arrest on conspiracy cocaine trafficking charges. This case presents the question of whether the United States has presented sufficient evidence that Hernandez-Duron, who is alleged to be a large-scale drug trafficker with prior failures to appear, prior deportations, and no legal status in the United States, poses a risk of nonappearance and/or danger to the community. The Court finds that the United States met its burden that Hernandez-Duron poses a risk of nonappearance if released and will detain Hernandez-Duron pretrial.

## I.    ANALYSIS

Hernandez-Duron and his codefendants were charged in Criminal Complaints with conspiracy to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 846 and of aiding

and abetting the same in violation of 21 U.S.C. § 841(a). [DE 1]. At the initial appearance, the United States moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(B) and (C). The Court conducted a combined preliminary hearing and detention hearing on May 12, 2026, for all four defendants.[1]

A.   **LEGAL STANDARD**

The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). At the end of the preliminary hearing, the Court found probable cause as to each defendant; thus, a rebuttable presumption of detention arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a nonappearance nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted

---

[1] The case has since been presented to the Grand Jury, who indicted all four defendants in case no. 5:26-CR-00060-GFVT-EBA.

presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Through proffer and the bond report, Hernandez-Duron rebutted the presumption as to nonappearance and danger. Hernandez-Duron proffered the bond report and his lack of criminal history. Accordingly, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence. *See, e.g., United States v. Patriarca,* 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry,* No. 6:06-CR-82-DCR, 2006 WL 2037406, at \*6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes,* 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora,* 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir,* 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context.  18 U.S.C. § 3142(f).  The key is simply evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  The Court properly considers a wide range of proof.  The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors drive the analysis.

**B.**     **HERNANDEZ-DURON'S DANGER TO THE COMMUNITY**

The § 3142(g) factors drive the analysis.  Specifically, the Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense charged, the weight of the evidence against the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  *See* 18 U.S.C. § 3142(g).

**1.**     **Hernandez-Duron's History and Characteristics**

The Court must consider many aspects of Hernandez's background in making the decision to release or detain him.  Specifically, the BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]"  18 U.S.C. § 3142(g)(3).

Hernandez-Duron is a 38-year-old Mexican citizen.  He grew up in Mexico, where his parents and siblings all live.  [Pretrial Services Report at 2].  Hernandez-

Duron has four minor children who all live in Mexico with their mothers. [Pretrial Services Report at 2]. Hernandez-Duron has lived alone in Lexington, Kentucky, in the same residence for two years. [Pretrial Services Report at 1-2]. If released, Hernandez-Duron could live with his cousin.

Hernandez-Duron has never held formal employment, which favors detention. [Pretrial Services Report at 2]. His employment has been buying cars at auction and fixing them for resale. *See United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's long unemployment favors detention). Hernandez-Duron reported no mental health issues. His substance use history is unknown. [Pretrial Services Report at 3].

Hernandez-Duron has no criminal history outside of minor traffic offenses. [Pretrial Services Report at 3-4]. However, related to these offenses, Hernandez-Duron failed to appear in 2019 and used an alias in that same case. [Pretrial Services Report at 3-4]. Traffic court failures to appear carry little weight, but the use of an alias in a court proceeding suggests an effort to evade prosecution. *United States v. Vysniuaskas*, 2011 WL 5433960, at *9 (E.D. Mich. Nov. 9, 2011) (citing as a flight risk indicator the defendants' "use of aliases allowed [that] them to avoid detection by law enforcement"). Hernandez-Duron does not have legal status to be present in the United States, is currently subject to an ICE detainer, and has been deported on two previous occasions.

## 2.    The Nature and Circumstances of the Offense Charged

The BRA requires Courts to consider the "nature and circumstances of the offense charged, including whether the offense is a crime of violence[.]" 18 U.S.C.

§ 3142(g)(1).   Congress has assigned a special category of presumed detention to narcotics trafficking crimes, reflecting the seriousness of those crimes' dangerousness to the community.

The facts underlying the charges were described in the Criminal Complaint and in the generally consistent testimony of United States witness, DEA Special Agent Leah Newell, as follows:

The DEA, FBI, HSI, and Kentucky State Police were conducting a joint investigation of codefendant Marion Pinder and his alleged drug trafficking organization.   Law enforcement was conducting surveillance of Pinder at his residence on Winthrop Drive on April 20, 2026, when a Dodge Ram registered in Louisiana to codefendant Santiago Rodriguez ("Santiago") arrived.   The Ram had previously been tracked to Corpus Christi, Texas, where it had made several border crossings into Mexico.   Santiago and his brother (and codefendant) Jesus Rodriguez ("Jesus") exited the Ram and went inside Pinder's garage.   At one point, Jesus and Santiago unloaded a cooler from the truck bed and took it inside Pinder's garage.   A short time later, Hernandez-Duron arrived and entered Pinder's garage.   According to the Complaint, law enforcement knew Hernandez-Duron as a prior target of DEA investigations.   Pinder's garage door closed with all four men inside, and shortly thereafter, reopened.

Santiago and Jesus exited the area in the Ram.   Law enforcement followed. Pinder loaded the cooler into a Jeep Compass.   Pinder and Hernandez-Duron exited the area in the Compass.   Santiago and Jesus were eventually tracked to a Hampton

Inn where they had rented a room. Santiago and Jesus provided written consent for law enforcement to search their hotel room and the Ram. Law enforcement located approximately 30 kilograms of cocaine in the Ram.

Simultaneously, law enforcement followed Pinder and Hernandez-Duron to the Millpond Shopping Center. Law enforcement stopped the vehicle, at which point Pinder and Hernandez-Duron fled the area on foot—though Pinder and Hernandez-Duron suggested at the detention hearing that they either did not flee or fled but stopped of their own accords. Both men were quickly apprehended. Law enforcement approached the Jeep and viewed a kilogram of suspected cocaine in plain view in the vehicle. The packaging of the cocaine in the Jeep was consistent with the packaging of the cocaine in the Ram. The cooler contained only ice and shrimp. At the detention hearing, the defendants maintained this transaction related to shrimp, not drugs.[2]

As a result of the above activities, law enforcement obtained and executed a search warrant for Pinder's Winthrop Drive residence. During the search they recovered 16 kilograms of cocaine and a .45 caliber handgun with a round in the chamber. The total cocaine seized from the Ram, the Jeep, and the Winthrop Drive residence was 47 kilograms. The wholesale street value of 47 kilograms of cocaine is approximately one million dollars. *See United States v. Bucio*, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the

---

[2] The United States did not adequately piece the import of the cooler and shrimp together. As far as the Court can guess, and this is merely a guess, the United States implies that the cooler was used to transport kilograms of cocaine from Santiago's Ram into Pinder's garage, where, at some point, it was filled with shrimp and then placed in the Jeep.

offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme").

### 3.    The Weight of the Evidence of Dangerousness

This BRA factor is somewhat duplicative of the first and third because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as Hernandez-Duron's history and personal characteristics.  "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).

Exclusive of the allegations in this case, there is zero evidence that Hernandez-Duron poses a danger to the community.  His criminal history consists solely of traffic offenses.

### 4.    The Nature and Seriousness of Danger Posed by Release

The Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."   18 U.S.C. § 3142(g)(4). As discussed above, the United States did not present any evidence that that Hernandez-Duron poses a danger to the community if released outside of the allegations in this case.

Weighing all the totality of the evidence before it, the Court finds the only risk Hernandez-Duron presents if released is the risk that he will fail to appear and/or flee the country, as discussed below.

C.    NONAPPEARANCE RISK

The United States proved by a preponderance of the evidence that there are no conditions that can adequately assure Hernandez-Duron's appearance at future court hearings.  Though Court awards little significance to failures to appear in traffic court, the Court considers it with the numerous other nonappearance issues present here.  *United States v. Munoz-Hernandez*, 2012 WL 5476892, at *11 (D. N.M. Nov. 5, 2012) ("The Court can see that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which the defendant faces a minimum of ten years' imprisonment.").  His "use of [an] alias reveals that he is a serious flight risk[.]"  *United States v. Aleman-Duarte*, 2020 WL 236870, at *4 (collecting supportive cases).  Hernandez-Duron's ICE detainer and likely pending deportation is not fatal to his case for release, but it raises the risk that if he is facing deportation regardless, he would flee to avoid prosecution.  *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) ("Alienage is a factor which may be taken into account, but by itself cannot be determinative.").  Hernandez-Duron's parents, siblings, children, and former partners are all in Mexico.  In contrast, he proffered that he has a cousin and a few other more distant relatives in the United States, though the United States Probation Officer could not make contact with those family members for verification.  "When assessing an alien defendant's ties to the United States, factors to be considered include how long the defendant has resided in this country, whether defendant has been employed in the United States, whether defendant owns any property in this country, and whether defendant has

any relatives who are United States residents or citizens." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

**D.      AVAILABILITY OF CONDITIONS**

On balance, the Court finds that the BRA demands pretrial detention in this case. Though Hernandez-Duron proposed living with his cousin, the information presented regarding the cousin was inadequate to satisfy the Court's nonappearance concern. Hernandez-Duron's ties to the United States, and the Eastern District of Kentucky specifically, are weak compared to his ties to Mexico, and there are no conditions that can overcome those weaknesses.

## II.      CONCLUSION

As discussed above, the United States demonstrated by a preponderance of the evidence that Hernandez-Duron is unlikely to appear as required.  However, the United States failed to prove by clear and convincing evidence that Hernandez-Duron is an unmitigable danger to the community or others based on his criminal history and the charges herein.

Accordingly, **IT IS ORDERED** that the United States' oral motion for detention is **GRANTED** and directs that Hernandez-Duron be detained pending resolution of the allegations against him.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 26th of May, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY